IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ABINGDON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v. ) | Criminal No. 1:09cr00002 |
| ) | |
| ) | **REPORT AND RECOMMENDATION** |
| CHRISTOPHER SHAWN LESTER, ) | |
|     Defendant ) | |

*I. Background*

This case is before the court on the motion of the defendant, Christopher Shawn Lester, to suppress certain evidence seized and statements made during a January 3, 2008, search of his residence, (Docket Item No. 19) ("Motion"). The Motion is before the undersigned magistrate judge by referral pursuant to Federal Rule of Criminal Procedure 59(b) and 28 U.S.C. § 636(b)(1)(B). The undersigned conducted a hearing on the Motion on March 30, 2009. As directed by the order of referral, the undersigned now submits the following report and recommended disposition.

*II. Facts*

Lester is charged in a three-count indictment with possession with intent to distribute oxycodone in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C), possession with intent to distribute hydrocodone in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(D), and possession of a firearm while being an unlawful user of a controlled substance in violation of 18 U.S.C. §§ 922(g)(3) and 924(a)(2).

The January 3, 2008, search of Lester's Buchanan County residence was incident to a warrant issued by Virginia state court Magistrate Harold Mitchell. The Affidavit For Search Warrant filed with Magistrate Mitchell was sworn to by Virginia State Police Special Agent Anthony Skeens (Government's Exhibit No. 1) ("Affidavit"). The Affidavit states that a search of the defendant's residence was requested in relation to the offense of distribution of schedule II controlled substance in violation of Virginia Code § 18.2-248. The Affidavit states that the things to be seized were:

1. Books, records, receipts, notes and other documents relating to the transportation, ordering, purchasing, and distribution of controlled substances, in particular, OXYCONTIN and METHADONE both a schedule II controlled substances.
2. Papers, tickets, notes, schedules, receipts and other items relating to domestic and foreign travel, and purchase, rental, or lease of automobiles, buildings, lockers, or equipment.
3. Books, records, receipts, bank statements and records, money drafts, letters of credit, money orders and cashier's check receipts, bank checks and other items evidencing the obtaining, secreting, transfer and/or concealment of assets and the obtaining, secreting, transfer, concealment and/or expenditure of money.
4. Financial proceeds, jewelry, vehicles, and other assets obtained as a result of dealing in controlled substances, in particular, OXYCONTIN and METHADONE both a schedule II controlled substances.
5. Photographs, in particular, photograph of co-conspirators, of assets, and/or of in particular, OXYCONTIN and METHADONE a schedule II controlled substances. Videotapes and surveillance equipment used to facilitate the distribution of, OXYCONTIN and METHADONE both a schedule II controlled substances.
6. OXYCONTIN and METHADONE both a schedule II controlled substances, other drugs and related drug paraphernalia, including but not limited to packaging and distribution materials such as scales, bags, cutting agents, tape and other drug related

>        paraphernalia.
> 7.    Items of ownership or articles of personal property tending to show the ownership, dominion or control of premises.
> 8.    Computers, worksheets and record, ETC.

The Affidavit states that "[t]he material facts constituting probable cause" were:

> In the past 72 hours a reliable person has observed "OXYCONTIN" and "METHADONE" both a schedule II controlled substance inside the residence.

The Affidavit also states:

> I was advised of the facts set forth in this affidavit, in whole or in part, by an informer. This informer's credibility or the reliability of the information may be determined from the following facts:
>
>> The reliable person has given information on several occasions in the past. The reliable person has given information that has lead to arrests and convictions in Commonwealth.
>> The reliable person has provided information to the affiant which has been verified through other means.

Skeens testified that, at the time he presented the Affidavit, he also presented an affidavit to Magistrate Mitchell seeking a search warrant for the Buchanan County residence of Randy McCoy, (Government's Exhibit No. 2). The affidavit presented for the warrant for McCoy's resident states that "[t]he material facts constituting probable cause" were:

> In the past 72 hours a reliable person has observed Randy McCoy with

> "OXYCONTIN" a schedule II controlled substance in his possession.
> The reliable person overheard Randy McCoy state that he was going to
> take the "OXYCONTIN" back to his residence.

Skeens testified that he had received the information cited in the above affidavits from the same confidential informant at approximately 7:30 p.m., on January 2, 2008. Skeens stated that the confidential informant had provided him with reliable information in the past, which had been used to arrest and convict others for drug distribution. Skeens stated that the confidential informant told him that he had been at Lester's residence and observed large quantities of oxycodone and methadone. The confidential informant stated that Steve Allen Lester and McCoy also were present at the time that he observed the controlled substances in Lester's residence. The confidential informant told Skeens that he had overheard McCoy state that he was going to take the oxycodone to his residence.

Skeens also testified that he received this information after receiving information from other sources that Steve Allen Lester was obtaining large quantities of oxycodone in the Martinsville area and bringing it into Buchanan County for distribution. Skeens testified that sources had told him that McCoy was obtaining oxycodone from Steve Allen Lester and Lester was selling oxycodone for McCoy. Skeens admitted that none of this additional information was presented to Magistrate Mitchell when he requested the search warrants for Lester's and McCoy's residences. Skeens admitted that there was no evidence presented to Magistrate Mitchell to show any connection between the alleged drug trafficking by Lester and McCoy. In fact, Skeens testified that he has no recollection of providing Magistrate Mitchell with any oral evidence in support of his request for the search warrant of either Lester's or

McCoy's residence. Nor does he remember Magistrate Mitchell asking him any questions. Skeens further admitted that he sought the issuance of and executed the search warrant on Lester's residence within 24 hours of receiving information from the confidential informant because he was afraid that the drugs would be distributed before they could be seized.

On the day of the search, Skeens went to serve the search warrant on McCoy's residence. Buchanan County law enforcement officers Billy Owens and Ray Foster went to serve the search warrant on Lester's residence. Owens testified that when he arrived at Lester's residence, he knocked on the door and Lester answered the door. Owens stated that he told Lester he had a warrant to search his residence and asked Lester if there were any illegal substances in the residence. Owens testified that Lester then directed the officers to the location of the drugs.

When Skeens arrived at McCoy's residence, McCoy was not at the residence. Skeens then left McCoy's residence and traveled to Lester's residence and participated in the search of Lester's residence. He also prepared the return of the items seized. The officers seized firearms, oxycodone and hydrocodone tablets and various documents from Lester's residence. Lester also made a statement to law enforcement officers at the time of the search of his residence admitting that he had been trafficking in oxycodone and methadone from his residence for approximately the past year in order to support his own drug addiction and pay his living expenses.

Owens testified that Officer Raymond Webb advised Lester of his rights before Lester made this statement to Owens. In particular, Owens testified that Webb advised

Lester that he had a right to remain silent, that he had a right to consult an attorney and have the attorney present with him during questioning and that if he could not afford an attorney, one would be appointed for him. Owens stated that Lester was not arrested or placed in custody on the date of the search of his residence. After being advised of his rights, Lester was very cooperative, according to Owens. Owens testified that, as Lester spoke, he wrote down Lester's statements. This written summary of Lester's statements was reviewed and signed by Lester. (Defendant's Exhibit No. 1)

Both Skeens and Owens testified that they knew that in order to prove the crime of distribution of a controlled substance under Virginia Code § 18.2-248 they must present evidence of distribution. Both officers admitted that the probable cause statements submitted to Magistrate Mitchell did not contain any allegation that controlled substances were being distributed from either Lester's or McCoy's residence or from any other location. Both officers, however, stated that they had presented similar affidavits to magistrates, including Magistrate Mitchell, on other occasions and had been given search warrants to search for evidence of drug distribution. Both officers also testified that they believed the search warrant issued for Lester's residence was valid.

Owens testified that he was not present when Skeens presented the affidavits for these warrants to Magistrate Mitchell. He did state, however, that he had read the Affidavit, which was attached to the search warrant for Lester's residence, before he served the warrant.

*III. Analysis*

The Motion asserts that the evidence seized by state law enforcement officers in the January 3, 2008, search of Lester's residence and the statements made by Lester at the time of the search should be suppressed because the Affidavit did not state probable cause to support the issuance of the search warrant.

The standard this court should use in evaluating Lester's illegal search and seizure claim is "whether the actions of the state officials in securing the evidence violated the Fourth Amendment to the United States Constitution." *United States v. Eastland*, 989 F.2d 760, 766 (5th Cir. 1993) (quoting *United States v. Walker*, 960 F.2d 409, 415 (5th Cir. 1992)); *see also United States v. Clyburn,* 24 F.3d 613, 616 (4th Cir. 1994); *United States v. Wright*, 16 F.3d 1429, 1437 (6th Cir. 1994); *United States v. Mitchell*, 783 F.2d 971, 973-74 (10th Cir. 1986). The Fourth Amendment to the U.S. Constitution states "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation...." U.S. CONST. amend. IV. Furthermore, the U.S. Supreme Court has held that the language of the Fourth Amendment is "precise and clear." *Stanford v. Texas,* 379 U.S. 476, 481 (1965). Therefore, to comply with the clear terms of the Fourth Amendment, a warrant must be based upon probable cause established by evidence offered by oath or affirmation.

The Supreme Court has described the "probable cause" required to authorize a search as "a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). The Supreme Court has adopted a "totality-of-the-circumstances" test to determine whether probable cause

-7-

supported the issuance of a search warrant. *Gates*, 462 U.S. at 238. "The critical element in a reasonable search is not that the owner of the property is suspected of crime but that there is reasonable cause to believe that the specific 'things' to be searched for and seized are located on the property to which entry is sought." *Zurcher v. Stanford Daily*, 436 U.S. 547, 556 (1978). The Court also has held that "proof must be of facts so closely related to the time of the issue of the warrant as to justify a finding of probable cause at that time." *Sgro v. United States,* 287 U.S. 206, 210 (1932). Thus, "there is no question that time is a crucial element of probable cause." *United States v. McCall*, 740 F.2d 1331, 1335 (4th Cir. 1984). Furthermore, to establish probable cause for a search there must be a sufficient nexus between the criminal conduct, the items to be seized and the place to be searched. *See United States v. Lalor*, 996 F.2d 1578, 1582-83 (4th Cir. 1993). Also, "residential searches have been upheld only where some information links the criminal activity to the defendant's residence." *Lalor*, 996 F.2d at 1583.

Probable cause may be established through hearsay information from a reliable informant. *See United States v. Ventresca,* 380 U.S. 102, 108-09 (1965); *Draper v. United States*, 358 U.S. 307, 312-13 (1959). The Supreme Court has noted that two factors are instrumental in determining whether hearsay information provided by an informant amounts to probable cause for a search. Those two factors are the informant's "veracity" or "reliability" and his or her "basis of knowledge." *Gates*, 462 U.S. at 238. The Supreme Court in *Gates* also recognized, however, that "conclusory" statements from reliable informants are not sufficient to establish probable cause. *Gates*, 462 U.S. at 239. "Sufficient information must be presented to the magistrate to allow that official to determine probable cause; his action cannot

be a mere ratification of the bare conclusions of others." *Gates*, 462 U.S. at 239. The Supreme Court in *Gates* affirmed its holding in *Aguilar v. Texas*, 378 U.S. 108, 114 (1964), that an affidavit must contain some of the underlying facts and circumstances from which the informant concluded that contraband was present in the identified location to be sufficient to establish probable cause. *See* 462 U.S. at 239.

The court begins its analysis as to whether sufficient probable cause existed for the issuance of this warrant by acknowledging that a finding of probable cause is to be given "great deference." *United States v. Blackwood*, 913 F.2d 139, 142 (4th Cir. 1990) (quoting *Spinelli v. United States*, 393 U.S. 410, 419 (1969)). Nevertheless, the clear language of the Fourth Amendment requires that probable cause must exist to issue a search warrant. The evidence before the court shows that probable cause did not exist for the issuance of this search warrant. The Affidavit states only: "In the past 72 hours a reliable person has observed "OXYCONTIN" and "METHADONE" both a schedule II controlled substance inside the residence." The Affidavit did not include any information as to how the confidential informant knew the substances he observed were Oxycontin and methadone. The Affidavit did not include any information as to the quantity of controlled substances present. Nor did it contain any information as to whether anyone in the residence had a valid prescription for these substances. It contained no information regarding the source of the controlled substances. Furthermore, it did not contain evidence that anyone associated with this residence was involved in the distribution of controlled substances. In short, the evidence contained in the Affidavit did not establish that any crime had been committed, much less the crime of distribution of a controlled substance.

-9-

Case 1:09-cr-00002-JPJ-PMS   Document 30   Filed 04/01/09   Page 9 of 18   Pageid#: 83

The court's inquiry does not end here, however. The court must next decide whether the good faith exception to the exclusionary rule, set forth in *United States v. Leon*, 468 U.S. 897, 915, 918-20 (1984), applies under the circumstances of this case. In *Leon*, the Supreme Court held that the exclusionary rule does not bar admission of evidence gained by officers acting in objectively reasonable reliance on a warrant later determined to be invalid. *See* 468 U.S. at 913. The Supreme Court in *Leon* outlined the following four situations in which an officer's reliance on such a warrant would not be reasonable: 1) when the warrant is based on an affidavit containing knowing or reckless falsity; 2) when the magistrate has simply acted as a rubber stamp for the police; 3) when the affidavit does not provide the magistrate with a substantial basis for determining the existence of probable cause; and 4) when the warrant is so facially deficient that an officer could not reasonably rely on it. *See* 468 U.S. at 923.

The Supreme Court recently revisited the good faith exception to the exclusionary rule in *Herring v. United States*, ___U.S. ___, 129 S. Ct. 695 (2009). In *Herring*, the Court recognized that "[t]he fact that a Fourth Amendment violation occurred – i.e., that a search or arrest was unreasonable – does not necessarily mean that the exclusionary rule applies. ... " 129 S. Ct. at 700 (citations omitted). Instead, the Court reiterated that the exclusionary rule should be applied to suppress evidence of a crime only in very limited circumstances.

> First, the exclusionary rule is not an individual right and applies only where it "'result[s] in appreciable deterrence.'"...
> In addition, the benefits of deterrence must outweigh the costs. ...
> To trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the

-10-

justice system.

*Herring*, 129 S. Ct. 700, 702 (citations omitted).

In *Herring*, police officers were erroneously informed that an arrest warrant was outstanding for an individual. The officers stopped the individual and placed him under arrest. During a search of his person incident to arrest, the officers found the defendant, who was a convicted felon, to be in possession of a firearm and methamphetamine. Only minutes after the contraband was discovered, the officers were informed that there was no outstanding warrant for the individual's arrest. The Court in *Herring* denied suppression of the evidence seized based on its finding that "the conduct at issue was not so objectively culpable as to require exclusion." 129 S. Ct. at 703.

Despite the government's assertion to the contrary, I find that the Supreme Court's holding in *Herring* is not particularly relevant to the facts of this case – other than to demonstrate the current Court's disfavor of the application of the exclusionary rule. *See also Hudson v. Michigan*, 547 U.S. 586, 591 (2006) (exclusionary rule applicable "only where its deterrence benefits outweigh its 'substantial social costs'" (quoting *Leon,* 486 U.S. at 907). In *Herring*, the law enforcement officers acted in good faith upon what was only minutes later determined to be false information. In this case, the search warrant at issue sought to seize evidence of the crime of distribution of a controlled substance. Both the officer who obtained the warrant, Skeens, and the officer who executed the warrant, Owens, admitted that they knew the elements of the crime of distribution of a controlled substance. Both admitted that they were familiar with the contents of the Affidavit – Skeens because he drafted it and Owens because

-11-

he read the Affidavit before he executed the search warrant. Both admitted, although Skeens did so reluctantly, that the Affidavit did not establish probable cause that the crime of distribution of a controlled substance had been committed by anyone, anywhere. Perhaps, most shockingly, both men asserted that they believed that the warrant was a valid warrant because they had presented similarly deficient affidavits on numerous occasions to Virginia state court magistrates, including Magistrate Mitchell, and had been issued warrants to search for evidence of the distribution of controlled substances. Based on the facts of this case, the court is left to only one conclusion – the magistrate simply "rubber stamped" the bare bones Affidavit presented to him.

I do not mean to suggest that the officers involved in the search at issue in this case acted in subjective bad faith. This court is acutely aware of the impact that the distribution of oxycodone and other narcotic painkillers is having on the residents of Southwest Virginia. This court also is aware of the difficulties local law enforcement agencies face as they battle this ever-increasing problem. I cannot under *Leon,* however, find that the officers' reliance on this warrant was objectively reasonable.

In *United States v. Wilhelm,* 80 F.3d 116, 121-22 (4th Cir. 1996), the Fourth Circuit recognized that the *Leon* good-faith exception "does not apply in the case of a bare bones affidavit." In *Wilhelm*, the affidavit at issue contained information from an unnamed source that the source had observed marijuana being distributed from the residence within the past 48 hours. *See* 80 F.3d at 118. The court held that the affidavit was a "bare bones" affidavit because it contained no information from which the magistrate could have reached an independent conclusion as to the reliability of the

-12-

informant. *See Wilhelm*, 80 F.3d at 121.

In this case, the Affidavit contains information from which the magistrate could conclude that the informant was reliable, in that the Affidavit stated: "The reliable person has given information on several occasions in the past. The reliable person has given information that has lead [sic] to arrests and convictions in Commonwealth. The reliable person has provided information to the affiant which has been verified through other means." Unfortunately, the Affidavit did not contain information from this reliable person which set forth probable cause that a crime had been committed or that evidence of that crime would be found in this residence. To put it bluntly, if ever there existed a "bare bones" affidavit, the Affidavit in the case must be considered such. Furthermore, the otherwise insufficient Affidavit "cannot be rehabilitated by testimony concerning information possessed by the affiant when he sought the warrant but not disclosed to the issuing magistrate." *Whiteley v. Warden,* 401 U.S. 560, 565 n. 8 (1971) (internal citations omitted).

I further find that the facts of this case justify the application of the exclusionary rule to suppress the evidence seized during the January 3, 2008, search of Lester's residence. As stated by the Supreme Court in *Herring*, the exclusionary rule should be applied only when it will result in "appreciable deterrence." 129 S. Ct. at 700. In this case, these officers testified that they routinely obtained search warrants from state court magistrates to search for evidence of the distribution of controlled substance on similarly deficient affidavits. The application of the exclusionary rule in this case will send a strong message to these officers that a search warrant issued on such a bare bones affidavit clearly violates the Fourth Amendment and that the practice of

-13-

obtaining such warrants must not continue.

"At the very core [of the Fourth Amendment] stands the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion." *Silverman v. United States*, 365 U.S. 505, 511 (1961). "The right to privacy in one's home is a most important interest protected by the Fourth Amendment...." *Wilhelm*, 80 F.3d at 120. To allow law enforcement officers to use evidence seized in a search of this residence based on this Affidavit – whether upon a finding of probable cause or pursuant to application of the good faith exception – would sanction the very evil the Fourth Amendment seeks to protect against. *See Payton v. New York*, 445 U.S. 573, 585 (1980).

Next, the court must consider whether Lester's statement given during an illegal search of his residence should be suppressed. The evidence before the court shows that prior to giving the statement, Lester was advised of his rights as required under *Miranda v. Arizona*, 384 U.S. 436 (1966). *Miranda* warnings by themselves, however, are not sufficient to remove the taint of the illegal search conducted in violation of the Fourth Amendment. *See Brown v. Illinois*, 422 U.S. 590, 602-04 (1975). "Where a Fourth Amendment violation 'taints' the confession, a finding of voluntariness for the purposes of the Fifth Amendment is merely a threshold requirement in determining whether the confession may be admitted in evidence.... Beyond this, the prosecution must show a sufficient break in events to undermine the inference that the confession was caused by the Fourth Amendment violation." *Oregon v. Elstad*, 470 U.S. 298, 306 (1985) (citations omitted). In *Brown*, the Supreme Court held that whether a confession was "'sufficiently an act of free will to purge the

-14-

primary taint'" of an illegal arrest under the Fourth Amendment and, therefore, was admissible "must be answered on the facts of each case." 422 U.S. at 602, 603 (quoting *Wong Sun v. United States*, 371 U.S. 471, 486-88 (1963)). Included among the factors relevant to such a determination are the "temporal proximity of the arrest and the confession, the presence of intervening circumstances, ..., and, particularly, the purpose and flagrancy of the official misconduct." *Brown*, 422 U.S. at 603-04; *see also United States v. Seidman*, 156 F.3d 542, 548 (4th Cir. 1998) (suggesting application of exclusionary rule would be appropriate to a defendant's statement made after being confronted with incriminating evidence found in an illegal search).

After considering the factors listed in *Brown*, I find that the government has failed to demonstrate a "dissipation of the taint" of the illegal search to prevent the application of the exclusionary rule to Lester's statement. *Leon*, 468 U.S. at 911 (quoting *Brown*, 422 U.S. at 609). Lester's statement was given while the illegal search of his residence continued and immediately after Lester directed officers to the location of the controlled substances after being served with the invalid search warrant. Cases finding an "attenuation" or "dissipation" of the taint under *Brown* have required much longer time periods. *See United States v. Drayton*, 2006 WL 758746 at *6 (W.D. Va. March 23, 2006); *see also United States v. Gillespie*, 332 F. Supp. 2d 923, 931 (W.D. Va. 2004) (exclusionary rule applies to exclude defendant's statements where "very little time" passed between illegal search and defendant's statements to police). The only intervening circumstance presented by the government in support of its argument against the suppression of Lester's statement was the fact that Lester was advised of his *Miranda* rights prior to making the statement. *See Dunaway v. New York*, 442 U.S. 200, 218 (1979) (confession should be excluded under Fourth Amendment where "no

-15-

intervening event of significance whatsoever" occurred between illegal arrest and confession). The most significant intervening event that occurred in this case, however, supports the application of the exclusionary rule and suppression of Lester's statement. Lester knew that the officers had recovered controlled substances in his home as a result of the illegal search before he gave his statement to Owens. *See Gillespie*, 332 F. Supp. 2d at 932 (insufficient attenuation between illegal search and statements given where defendant confronted with fact that officers had found cocaine in apartment in the search). Furthermore, as found above, the officer who took the statement could not have objectively relied on the warrant issued without an adequate showing of probable cause.

For these reasons, I find that the search warrant at issue in this case was not supported by sufficient probable cause. I further find that the good faith exception set forth in *Leon* should not apply to prevent the suppression of the evidence seized in this search. Finally, I find that the exclusionary rule should apply to suppress both the physical evidence gathered and Lester's statement given at the time of the illegal search. Therefore, I will recommend that the court grant the Motion and suppress the evidence seized and the statement given during in the January 3, 2008, search of Lester's residence.

In reaching this conclusion, I am painfully aware that I am recommending that the court suppress the very evidence which may be necessary to convict an admitted drug dealer. Nonetheless, I find that the officers' wilful blindness to the insufficiency of the probable cause statement contained in this Affidavit is "sufficiently culpable" that the benefits of deterring similar conduct in the future "is worth the price paid by

-16-

the justice system" today. *Herring*, 129 S. Ct. at 702.

## PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

As supplemented by the above summary and analysis, the undersigned now submits the following formal findings, conclusions and recommendations:

1. Probable cause did not exist for the issuance of the state court warrant which served as the basis for the January 3, 2008, search of Lester's residence;
2. The good faith exception does not apply to prevent the suppression of the evidence gathered in the January 3, 2008, search of Lester's residence; and
3. The exclusionary rule should be applied to suppress both the physical evidence gathered and Lester's statement given during the January 3, 2008, search of his residence.

## RECOMMENDED DISPOSITION

Based upon the above-stated reasons, the undersigned recommends that the Motion be granted and that the court suppress all evidence seized and statements made during in January 3, 2008, search of the defendant's residence.

-17-

## Notice to Parties

Notice is hereby given to the parties of the provisions of 28 U.S.C. § 636(b)(1)(C):

> Within ten days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

Failure to file timely written objections to these proposed findings and recommendations within ten days could waive appellate review. At the conclusion of the 10-day period, the Clerk is directed to transmit the record in this matter to the Honorable James P. Jones, Chief United States District Judge.

The Clerk is directed to send certified copies of this Report and Recommendation to all counsel of record at this time.

DATED: This 1st day of April 2009.

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE