# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** ) | |
| ) | Case No. 1:09CR00002 |
| v. ) | **OPINION AND ORDER** |
| ) | |
| **CHRISTOPHER SHAWN LESTER**, ) | By: James P. Jones |
| ) | Chief United States District Judge |
| Defendant. ) | |

*Ashley B. Neese, Assistant United States Attorney, Abingdon, Virginia, for United States; Nancy C. Dickenson, Assistant Federal Public Defender, Abingdon, Virginia, for Defendant.*

In this criminal case, the defendant has filed a Motion to Suppress evidence seized pursuant to a search warrant. Having referred this matter to the magistrate judge, and having conducted a de novo review, I adopt the magistrate judge's report and recommendation and grant the defendant's Motion to Suppress.

I

The defendant, Christopher Shawn Lester, has been indicted for possession with the intent to distribute oxycodone and hydrocodone, and for the possession of firearms while being an unlawful user of a controlled substance. During the execution of a search warrant at the defendant's home, law enforcement officers

found prescription drugs and firearms, and while the search progressed, the defendant made incriminating statements. After he was indicted, the defendant moved to suppress the evidence on the ground that the search had violated the Fourth Amendment.

The motion was referred to the Honorable Pamela Meade Sargent, United States Magistrate Judge, for report and recommendation pursuant to 28 U.S.C.A. § 636(b)(1)(B) (West 2006). After conducting an evidentiary hearing, the magistrate judge recommended that the motion be granted. The government has filed objections to the report, which have been briefed and argued and are ripe for decision.

The facts surrounding the search are uncontested and are contained in the transcript of the hearing before the magistrate judge.

The warrant authorizing the search was issued by a state magistrate in Buchanan County, Virginia, and was based on an affidavit submitted by Special Agent Anthony Skeens of the Virginia State Police. The affidavit provided that:

> The material facts constituting probable cause that the search should be made are:
>
> In the past 72 hours a reliable person has observed 'OXYCONTIN" and "METHADONE" both a schedule II controlled substance inside the residence.
>
> Since this affidavit is being submitted only for the limited purpose of securing authorization for a search warrant, your affiant has not included

each and every fact, which is known to the affiant. Rather, your affiant has set forth only those facts that are believed to be necessary to establish probable cause to search.

(Def.'s Mot. to Suppress Ex. 1 at 2.) Additionally, the affidavit stated that the search "is requested in relation to an offense substantially described as follows: 18.2-248 - Distribution of Schedule II controlled substances," and, in a "property to be seized" section, listed items related to this activity. (*Id.* at 1, 3.)

At almost the same time that Skeens submitted the affidavit for the defendant's residence, he also submitted to the same state magistrate an affidavit for the residence of a person named Randy McCoy. Skeens affirmed that he had probable cause to search McCoy's residence because, "In the past 72 hours a reliable person has observed Randy McCoy with 'OXYCONTIN' a schedule II controlled substance in his possession. The reliable person overheard Randy McCoy state that he was going to take the 'OXYCONTIN' back to his residence." (Report & Recommendation 3-4.)

Investigator Billy Owens of the Buchanan County Sheriff's Department and other law enforcement officers executed the search warrant at the defendant's home.[1] After the defendant learned of the search warrant, he admitted to Owens that he possessed illegal substances and told Owens where to find them. During the search

---

[1] While making copies of the paperwork, Owens mistakenly attached a copy of the McCoy affidavit to the defendant's search warrant. Thus, the search warrant served at the defendant's home did not include a copy of the relevant affidavit.

-3-

but after the defendant had been advised of his *Miranda* rights, the defendant and Owens conversed about the defendant's involvement with illegal drug distribution. Owens made notes during the conversation, which the defendant affirmed with his signature.

The government objects to the magistrate judge's findings that the affidavit lacked a sufficient basis to find probable cause and that the good-faith exception to the exclusionary rule does not apply.[2] I must review the aspects of the report to which the government objects de novo, and either "accept, reject, or modify, in whole or in part, the findings or recommendations" of the magistrate judge. 28 U.S.C.A. § 636(b)(1) (West 2006).

II

I will accept the recommendation of the magistrate judge. The affidavit prepared in support of the search warrant did not provide a sufficient basis for the state magistrate to find probable cause that evidence of a crime was located in the defendant's residence. The affidavit was so lacking that a well trained officer could

---

[2] Assuming that the search cannot be upheld, the government does not contest the magistrate judge's determination that the defendant's statements should be excluded as fruit of the poisonous tree.

-4-

not reasonably believe probable cause had existed, and therefore the good-faith exception to the exclusionary rule does not apply.

Probable cause suggests that there is "a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). It is a "practical, nontechnical conception." *Id.* at 231 (internal quotation marks omitted). In this sense, "a magistrate has the 'authority . . . to draw such reasonable inferences as he will from the material supplied to him by applicants for a warrant.'" *United States v. Bynum*, 293 F.3d 192, 197 (4th Cir. 2002) (quoting *Gates*, 462 U.S. at 240). To determine whether probable cause supported a search warrant, a court must apply a totality of the circumstances test. *Gates*, 462 U.S. at 231, 233.

Even if the totality of the circumstances demonstrates that there was no substantial basis to find probable cause, the fruits of a search still should not be suppressed unless "a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." *United States v. Leon*, 468 U.S. 897, 923 n.23 (1984). This good-faith exception, as it is commonly called, does not apply in four circumstances: (1) when the magistrate was misled by a knowing or reckless falsity in the affidavit; (2) when the magistrate abandoned his neutral, judicial role; (3) when an "affidavit [is] so lacking in indicia of probable cause as to

-5-

Case 1:09-cr-00002-JPJ-PMS   Document 49   Filed 05/22/09   Page 5 of 13   Pageid#: 209

render official belief in its existence entirely unreasonable"; and (4) when the warrant is so "facially deficient" that an officer could not "reasonably presume it to be valid." *Id.* at 923 (internal quotation marks omitted).

Here, the affidavit merely states that a reliable person observed Oxycontin and methadone inside the defendant's home. It does not allege that the defendant possessed these controlled substances without a prescription. It does not allege that the defendant or anyone else used or distributed the drugs in or from the defendant's home.

Although part of the affidavit referenced a statute that prohibits the unlawful distribution of drugs, it did not allege that the defendant had violated that statute. Although the "property to be seized" section listed items related to the unlawful distribution of drugs, nothing in that section or in any other part of the affidavit avers that the defendant possessed or used those items to illegally distribute drugs from his home.

Also absent from the affidavit is any description of Skeens' investigation of the defendant. He did not indicate whether the defendant's home had been under surveillance, whether the defendant or the defendant's home had been implicated by way of a controlled purchase, the length of time the defendant had been investigated, or any other similarly pertinent detail.

-6-

For these same reasons, the good-faith exception cannot apply. I find that the "affidavit [is] so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Id* (internal quotation marks omitted). Although the standard to determine whether an affidavit is sufficient for an officer to reasonably rely on it in objective good faith "is a less demanding showing than the 'substantial basis' threshold required to prove . . . probable cause . . .", the affidavit here does not suffice. *Bynum*, 293 F.3d at 195.

The government contends that because Skeens presented the defendant's affidavit and McCoy's affidavit to the state magistrate at the same time, the state magistrate could have read the two affidavits together to infer that McCoy intended to take Oxycontin from the defendant's home.

That is implausible. Neither affidavit mentions the other. Thus, even if it is assumed that the state magistrate had construed the affidavits together, it is unlikely that he had the information to infer what the government supposes here.[3] Moreover,

---

[3] Skeens explained in his testimony why he applied for the search warrants. He learned that Steven Allen Lester, the defendant's brother, planned to obtain a large quantity of oxycodone in Martinsville, Virginia, and distribute it in Buchanan County. The confidential informant told Skeens that while OxyContin and methadone were in the defendant's home, McCoy stated to Steven Lester that he planned to take OxyContin from Lester's home to to his residence. At the hearing, Skeens did not believe that he had related this information and confirmed that the state magistrate "didn't have any connection between Mr. McCoy and Mr. Lester before him . . . ." (Evidentiary Hr'g Tr. at 26.)

It could be argued that although it was omitted from the affidavit, this information

at the hearing, Skeens testified that McCoy had supplied Oxycontin to the defendant, which conflicts with the government's theory here that Skeens might have provided information to the state magistrate which might have led the state magistrate to infer that the defendant supplied McCoy.

In support of this dual-affidavit theory, the government cites *United States v. Williams*, 548 F.3d 311 (4th Cir. 2008), where a state court found probable cause for two search warrants after it had reviewed two affidavits that had been submitted at the same time. The Fourth Circuit reversed the district court's grant of the defendant's motion to suppress.

---

should be considered to determine whether the good-faith exception applies. *See Bynum*, 293 F.3d at 199 (declining to rule whether "additional facts, which the government proved were known to the affiant police officer, but not revealed to the magistrate prior to issuance of the search warrant, [can] be considered in the *Leon* analysis."). I find that such evidence should not be considered since *Leon* teaches that the good-faith exception does not apply when an officer relies "'on a warrant based on an *affidavit so lacking in indicia of probable cause* as to render official belief in its existence entirely unreasonable.'" *Id.* at 211 (Michael, J., dissenting) (quoting *Leon*, 468 U.S. at 923 (emphasis added)). Evidence of facts omitted from the affidavit would not help me determine whether that same affidavit was sufficient for an officer to reasonably rely upon a warrant based upon it.

Nor would it lead me to find that Skeens proceeded in good faith. I doubt that Skeens simply forgot to include this information in the affidavit, since "the gap between what [he] knew and what he told the magistrate is so pronounced . . . ." *Id.* I would be more inclined to conclude that even knowing of all its deficiencies, Skeens expected the state magistrate to accept this affidavit, just as he had done for Skeens many times before.

-8-

To the extent it is cited, to contend that the officers had probable cause in this case,[4] *Williams* is of no concern, since the court did not address whether there was sufficient evidence to find probable cause, but instead determined that the good-faith exception should have applied. *See id.* at 317.

If it is cited to maintain that the good-faith exception applies here, the government's reliance on *Williams* is misplaced. The court in *Williams* did not read two affidavits together to find an indicia of probable cause in one of them, as the government suggests. Rather, the investigating officer's "assertion of training- and experience-based knowledge" sufficed to connect the defendants' criminal activities with their homes. *Id.* at 320. Additionally, the affidavit described the officer's investigation and provided identifying information of the defendants in enough detail to "give rise to the common sense inference that [the investigating officer] learned through his investigation . . . that [the defendants] lived in the targeted dwellings." *Id.* at 321. For these reasons probable cause was not so lacking as to render official belief in its existence unreasonable.

---

[4] It is not clear from the government's objections whether it relies on *Williams* to contest the probable cause determination, the good-faith exception determination, or both. (*See* Gov't's Objections 10-11( "After reviewing the entirety of information set forth in both affidavits, the Fourth Circuit overturned the district court's determination to suppress the evidence based on the affidavits.").)

The government also relies on the recent Supreme Court opinion in *Herring v. United States*, 129 S. Ct. 695 (2009). In *Herring*, an officer believed that there was an outstanding arrest warrant for the defendant, but because another police employee made a negligent bookkeeping error, that belief turned out to be incorrect. Before the investigating officer was notified of the mistake, he had made a search incident to the arrest and discovered illegal drugs.

Assuming arguendo that a Fourth Amendment violation had occurred, the Court refused to apply the exclusionary rule, finding that the officer had relied on the arrest warrant in good faith. *Id.* at 698-704. It recounted the history behind the good-faith exception, and pointed out that "the exclusionary rule serves to deter deliberate, reckless, or grossly negligent conduct, or in some circumstances recurring or systemic negligence." *Id.* at 702.

I agree that the reasoning in *Herring* is relevant even though the context in which it was employed differs from the circumstances in this case. The Court's view that evidence should be excluded only in instances where the Fourth Amendment has been deliberately violated or recklessly disregarded informs my ruling here.[5]

---

[5] Some commentators believe that *Herring* is a precursor to the abolition of the exclusionary rule in its entirety. *See* Adam Liptak, *Supreme Court Edging Closer to Repeal of Evidence Ruling*, N.Y. Times, Jan. 31, 2009, at A1. In any event, unless and until that happens, I must enforce existing Supreme Court precedent.

-10-

To maintain that the officers did not act in deliberate disregard of the Fourth Amendment, the government relies on evidence of the officers' subjective belief that the affidavit and search warrant were legal. It points to Skeens' statement in the affidavit that he had "not included each and every fact" which he knew but rather had "set forth only those facts that are believed to be necessary to establish probable cause to search." (Def.'s Mot. Suppress Ex. 1 at 2.) The government also cites Skeens' testimony that he had "no reason to believe that the affidavit [was] not valid or the search warrant that he gave me [was] not valid." (Evidentiary Hr'g Tr. at 23.) Owens provided similar testimony. Skeens and Owens were convinced that the affidavit in this case was sufficient since they had successfully submitted similarly deficient affidavits in the past.

These facts do not advance the government's cause. Though "a particular officer's knowledge and experience" may frequently illuminate "all of the circumstances" that are relevant to determine whether the good-faith exception applies, the analysis is not "any more subjective than the one for probable cause . . . ." *Herring*, 129 S. Ct. at 703 (internal quotation marks omitted).

Skeens' statement in the affidavit has limited effect. It is language he has frequently used, if not form language. It might even hint that Skeens was insecure about the level of detail in the affidavit. Indeed, at the hearing, both Skeens and

-11-

Owens testified that they knew the affidavit did not contain sufficient facts to maintain probable cause for unlawful distribution of a controlled substance.

Furthermore, a violation of the Fourth Amendment should not be excused solely because the state magistrate in this case and in others approved inadequate affidavits in the past. If the evidence is not excluded here, those experiences only demonstrate that Skeens, Owens, and other law enforcement personnel will continue to disregard the requirements of the Fourth Amendment. Those experiences ensure, as *Leon* and its progeny require, that the deterrent effect of the exclusionary rule in this case overshadows any societal costs that may result from its application. *See Herring*, 129 S. Ct. at 700-01.

III

For the foregoing reasons, it is **ORDERED** as follows:

1. The magistrate judge's report and recommendation are ACCEPTED;
2. The government's objections are OVERRULED; and
3. The defendant's Motion to Suppress is GRANTED and evidence obtained from the search of the defendant's home and the incriminating statements made by the defendant at the time of the search are suppressed and excluded.

ENTER: May 22, 2009

/s/ JAMES P. JONES
Chief United States District Judge